**CLESI v. D'ANGELO, Appellant**

———

(Dec. 13, 1926.   Opinion and Decree.)
(Jan. 3, 1927.   Rehearing Refused.)

———

(*Syllabus by the Court*)

1. **Louisiana Digest—Brokers—Par. 18.**

Where a contract confers upon a real estate agent the exclusive right to sell the property during a specified time, the agent is entitled to a commission if, during that time, the owner sells the property himself or through an agent.

2. **Louisiana Digest—Master and Servant —Par. 29, 31, 32.**

It is a recognized rule that a party wrongfully discharged from his employment may treat the contract as performed and recover the contract price as the measure of his damages.

3. **Louisiana Digest—Brokers—Par. 3.**

In the absence of any stipulation in the contract as to the duration of employment, the agent is entitled to a reasonable time within which to procure a purchaser, unless in the meantime the authorization is revoked.

Appeal from First City Court. Hon. W. V. Seeber, Judge.

Action by Nicholas J. Clesi against Salvatore J. D'Angelo.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Prowell and McBride, of New Orleans, attorneys for plaintiff, appellee.

Paul W. Maloney, of New Orleans, attorney for defendant, appellant.

CLAIBORNE, J.   Plaintiff, a real estate broker, claims a commission from the defendant.

He bases his claim upon the following card agreement:

"New Orleans, March 7, 1926.
"N. J. Clesi, Real Estate Agent:
"Dear Sir—I hereby appoint you as my agent and exclusively authorize you to sell the following described property: No. 2842 Laurel Street. The single bungalow, grounds measure 32'x162'. Price to be $5500, or any other amount agreed upon. Terms, cash. Should you find a buyer or prove instrumental in finding one, or should the above mentioned property be sold by me or any other person during the term of this authorization, I will nevertheless pay you 4 per cent commission on the purchase price for your services rendered. The commission being earned and payable when agreement to purchase is signed. I require a cash deposit of 10 per cent to bind the sale, and therefore, authorize you to collect same. This agreement to be in full force and effect for 90 days from above date.
   "Signed.   S. D'ANGELO,
   "634 S. Carrollton."

Every word in the above contract is printed with the following exceptions only: "March 7-6-2842 Laurel St., Single Bungalow 35x162, $5500, 90 S. D'Angelo, 634 So. Carrollton." These are written.

The plaintiff alleged that after receiving the above authorization he made attempts to sell the defendant's property by advertising it and placing signs upon the property; that on March 8, 1925, the defendant signed an agreement to sell the above property to a party unknown to plaintiff for the price of $5600, through G. L. Deano, real estate agent; that when the defendant signed the above agreement of sale for

$5600 he became indebted to plaintiff, in accordance with the contract with him, for a commission of four per cent upon the amount of $5600 or $224.00.

The defendant admitted that he had sold the property through Deano; that he was under no obligation to the plaintiff; "that the card or agreement filed herein bears the signature of the defendant but was given to an agent of the plaintiff, and he signed his name thereto without anything therein except the blank print"; he denied all the other allegations of the petition.

There was judgment for plaintiff and defendant has appealed.

On the trial of the case plaintiff offered in evidence a document dated March 8, 1926. by which S. D'Angelo authorized G. L. Deano to sell the above property for $5600, and the agreement of M. Louis Miller to buy the same.

The defendant testified that plaintiff's card was presented to him by M. D'Albora did not write anything upon the card friends; D'Albora said to him: "I am now in the real estate business"; he shoved his hand in his pocket and got a card and said sign here; he said it was an agreement for the sale of his house; this was on March 4th and the card is dated March 7th; the card he signed was in blank and D'Albora said he bould return and fill it out; his son was present; Clesi did not put signs on his house as far as he knew; he realized he never had a real contract with Clesi; he did not make any agreement relative to the commission; D'Albora did not write anything upon the card in his presence; the card he presented to him was not filled out.

Anthony D'Angelo, defendant's son, testified that when D'Albora came to his father's house, his father said to him: "Why don't you try to sell my house on Laurel Street?" D'Albora then pulled out a card, his father signed it; he does not know whether there was any writing on it; D'Albora did not put any writing on it at the time, he said it was not a contract, just an agreement to show to his office to sell for $5500; this was on Thursday, March 4th; on Saturday he called at his office and told him not to sell the house; before his father signed, it was a blank card; his father told D'Albora the lot measured 32x162 feet; D'Albora pulled the card out and his father signed it.

It was admitted that the card was signed on March 4th and not on the 7th.

D'Albora being asked: "Did you present this card to Mr. D'Angelo?" Answered: "Yes."

"Q. Was it filled out completely?
"A. Yes, from his dictation on the front and back.
"Q. This agreement here, was not completed at the time, was it?
"A. The agreement was as it is. I have not seen the card since."

In corroboration of this witness the ink and the pen with which the words "S. D'Angelo" are written and the other words, appear to be the same.

But, be that as it may, the printed words of themselves, form the complete contract; the writing expresses only details descriptive of the thing to be sold and the price; but all the other conditions are in print, and concerning these the defendant does not say that he did not read them, nor that he did not know them, nor that he was in error concerning them. A party is bound by a written document signed by him, unless he alleges and proves error or fraud. None such is alleged or proven here concerning the printed matter, which

is a complete contract by itself, admitted by the defendant.

In the case of Viguerie vs. Davis, No. 10,431 Op. Bk. 71, this court said:

"A written offer to employ one as agent to sell land signed by the principal and tacitly accepted by the agent constitutes a contract of agency enforcible as to both. Where a contract of agency to sell real estate is exclusive or is granted for a specified time allowed the agent in which to effect a sale the principal cannot deprive the agent of his right to commissions by revoking the agency prior to the expiration of the time stipulated and the right of the agent to a commission is not affected by the sale of the property made either by the principal personally or through another agent."

Admitting that the figures "90" were not upon the card at the time the defendant signed it, to denote the duration of the authorization to sell, still there remains printed words: "I hereby appoint you may agent, and exclusively authorize you to sell" without any fixed time. This would mean that the plaintiff was accorded a reasonable time to perform his contract.

It has been held that "a broker to sell lands under a contract specifying no time for performance, is entitled only to a fair and reasonable opportunity to effect a sale".

"A reasonable time in which to procure a purchaser should be allowed, in the absence of any provisions in the contract of employment, unless the broker's authorization is in the meantime revoked." 9 C. J., 606, Note 81 W. Va. (a).

Plaintiff's contract was dated Thursday, March 4th, and the defendant sold his property on Monday, March 8th, five days. The plaintiff was therefore not given a reasonable time to perform his contract, and there is no contention that his authorization was revoked.

The defendant argues that the plaintiff did nothing of the things which were required of him to earn his commission. That may be true, but the ancient recognized rule is that a party wrongfully discharged from his employment may treat the contract as performed and recover the contract price as the measure of damages. 12 Orl. App. 385; C. C. 2749; Freeman & Freeman vs. Torre R. & I. Co., 157 La. 1097, 103 South. 334.