## KAUFMAN AGENCY v. VICCELLIO et al.
## No. 1721.

Court of Appeal of Louisiana. First Circuit.
June 9, 1937.

McCoy, King & Jones, of Lake Charles, for appellant.

Griffin T. Hawkins, of Lake Charles, for appellees.

OTT, Judge.

The plaintiff alleges that the defendants, Mrs. A. J. Viccellio, Sr., Charles T. Viccellio, and A. J. Viccellio, Jr., agreed, through Charles T. Viccellio, to pay it 5 per cent. commission for selling a house in Lake Charles owned by defendants for the price of $5,000; that a purchaser, ready, willing, and able to buy the property, was procured by plaintiff for the price fixed, but that defendants refused to sell to the prospective purchaser for the reason that they made a sale of the property to another person. This suit is to recover the 5 per cent. commission, or the sum of $250.

A. J. Viccellio, Jr., excepted to the jurisdiction of the court on the ground that he was a nonresident. Plaintiff thereupon filed a supplemental petition and asked for an attachment of the property of this defendant and the appointment of a curator ad hoc to represent him. The curator was appointed and the attachment issued.

The attorney for the other two defendants, who was also appointed curator for the absentee, filed an exception of no cause and no right of action. While the record does not show what disposition was made of this exception, we assume that it was overruled, as the defendants filed an answer and the case went to trial, resulting in a judgment in favor of the defendants. From the judgment rejecting its demands, plaintiff has appealed.

The answer of the defendants is in effect a general denial. After the testimony was taken, it appears that defendants filed another exception of no cause and no right of action. This exception is based on the ground that plaintiff did not prove that it was a licensed real estate broker as required by Act No. 236 of 1920, and, therefore, as said act prevents the recovery of any fee or claim for brokerage without a license, plaintiff in this case failed to show a cause or right of action against the defendants.

Plaintiff alleged in its petition that it was duly licensed to carry on the real estate brokerage business; this allegation was denied in the answer. No proof was offered by plaintiff to show a license, but, after the case was tried and before judgment was rendered, plaintiff filed a motion to have the case reopened to permit the plaintiff to introduce its license and bond as real estate broker to which motion was annexed the license from the Louisiana Real Estate Board. We are informed by counsel that, while the case was not actually reopened, the trial judge considered the license and bond annexed to the motion in passing on and overruling the exception.

The exception was properly overruled. In a suit for commissions by a real estate broker it is not necessary to allege and prove that the broker was licensed under the above act, as the want of a license is a matter of defense which must be specially pleaded and proved by the defendant. Stanford v. Bischoff, 159 La. 892, 106 So. 371; Layne v. Henderson, 9 La.App. 452, 121 So. 313; Vigurie v. Davis, 5 La. App. 77. Defendants did not prove that the plaintiff did not have a license as a real estate broker at the time the commissions are alleged to have been earned.

Mr. W. C. Kaufman, Sr., testified that in the early part of September, 1936, he called on Mr. Charles T. Viccellio, who handled the property for all the defendants, and told Viccellio that he thought his firm could sell the property of defendants located on a certain street in Lake Charles; that some discussion was had concerning the price. A few days later the witness again called at the office of Viccellio with a view of getting a contract signed making plaintiff firm the exclusive agents for selling the property; that Viccellio told him that he (Viccellio) would have to talk to his mother; that witness gave Viccellio a contract; that the next day witness called on Viccellio, who told him that they wanted $5,000 for the property, but would not sign a contract, stating that his word was as good as his bond, and telling Kaufman to sell the property and they would pay the commission.

The witness further testified that a few days after this conversation, he called Viccellio over the telephone and told him that a purchaser had been procured for the property for $5,000; that Viccellio stated that he was too busy, and suggested that the completion of the sale be postponed to a later hour on that day, or until the

7

next morning; that shortly after this telephone conversation, witness heard a rumor that Viccellio had sold the property to another person, whereupon witness called Viccellio again to ask about this report, and Viccellio denied the report and stated that he would see him the next morning. Another member of plaintiff firm was then sent to see Viccellio with a check for $250 and a receipt to bind the sale, but Viccellio refused to accept the money or sign the receipt, stating again that his word was as good as his bond, and that he would see plaintiff the next morning. Then about 5 o'clock in the afternoon of the same day witness called Viccellio, who then stated that they had given another party an option on the property but did not think this party would buy and he would come around the next morning and see plaintiff; that later on around 8:30 that night Viccellio called the witness and told him that this third party had exercised his option and the property had been sold to him.

Viccellio denies that he ever gave plaintiff the exclusive agency to sell the property, but that he told Mr. Kaufman that if he secured a purchaser for the price and they accepted his client, they, the Viccellios, would pay the 5 per cent. commission. This witness admits that he signed an option with another broker for the same price and with the same commission. This option was signed on September 16, 1936, and it was two days later that plaintiff procured a purchaser for the property for the same price. This witness admits that a member of plaintiff firm called on him between 2 and 3 o'clock on the date of the sale, and offered him a check for $250 and a receipt for him to sign in order to bind the sale to plaintiff's prospective purchaser; he admits that he refused to sign the receipt or accept the money as the option had not expired which had been given to another party. He further admits that he did not at that time tell the member of plaintiff firm that another person had an option on the property; the reason given for not informing plaintiff of this fact was that he did not think the other party would exercise the option and he would then be in position to deal with plaintiff's client. He states that he told both of the Kaufmans if he decided to accept their deal he would be there the next morning. He advised plaintiff about 7:30 p. m. on the date of these conversations that the property had been sold to this other party, and he was sorry that they could not accept the offer made by plaintiff's prospective purchaser.

We think the record justifies the following conclusions: First, that plaintiff was not given the exclusive agency to sell defendants' property; second, defendants agreed to pay the commission of 5% if plaintiff secured a purchaser for the price fixed and the sale was consummated; third, plaintiff did procure a purchaser able, ready, and willing to make the purchase; fourth, defendants did not inform plaintiff that they were negotiating with another person for the sale of the property until the sale to the other party had been made.

It is the contention of plaintiff that, regardless of the exclusive nature of its agreement with the defendants, inasmuch as it procured a purchaser able and willing to buy, the commission is now due. Plaintiff contends that it has complied with its part of the agreement.

■ ■ Where a real estate broker is given the exclusive agency to sell for a specified period, the principal cannot deprive the agent of his commission by selling the property himself or through another. Connelly v. Richmond, 9 La.App. 328, 119 So. 286; Vigurie v. Davis, 5 La.App. 77. And where the agency is not exclusive, but the agent is the moving cause in securing a purchaser, and the principal, without the knowledge of the agent, sells to this prospective purchaser, at a lower price, the agent is entitled to his commission. Grace Realty Co. v. Peytavin Planting Company, Inc., et al., 156 La. 93, 100 So. 62, 43 A.L.R. 1096.

■ But in the present case the agency was not exclusive nor did the principal sell to a prospective purchaser procured by plaintiff. For the agency to be exclusive so as to deprive the principal of the right to sell the property himself or through another, the exclusive nature of the agency must clearly appear. Kernaghan & Cordill v. Uthoff, 174 La. 880, 141 So. 865.

■ There can be no question of the right on the part of defendants in this case to sell their property to whomsoever they chose without becoming liable to plaintiff for commissions, provided they did not sell to a purchaser procured through plaintiff's efforts, and provided they did not act in bad faith. Dickinson v. Robinson, 145 La. 438, 82 So. 398; R.C.L. Vol. 4, p. 259, § 12. As defendants did not sell to a purchaser procured through the efforts of

plaintiff did they act in bad faith in failing to inform plaintiff of their negotiations with another for the sale of the property at the same time that plaintiff was endeavoring to secure a purchaser?

We have no hesitancy in reaching the conclusion that defendants should have advised plaintiff of the option which had been given to another on the property. While this concealment of the true situation was, in our opinion, an inethical act on the part of one of the defendants, yet we cannot say that this concealment so misled plaintiff as to cause it any injury. If defendants had informed plaintiff on the day of the sale that they had given an option on the property to another, the defendants would still have had the right to sell the property to this other person even though plaintiff on the same day did present another purchaser. The concealment or bad faith must be such as to mislead the agent to his injury and it does not appear that such was the case in this instance.

For the reasons assigned, the judgment is affirmed, at the cost of the appellant.